RICHARD A. AITKEN, Respondent, v. NELLIE L. AITKEN, as Admin-
istratrix, etc., of J. SCOTT AITKEN, Deceased, Appellant.

*Contract — agreement that the rent of a house should be measured by the cost of repair-
ing another, construed.*

In an action brought to recover the rent of a house, it appeared that it was a
family residence, owned by the plaintiff, who also owned a cottage near by,
and who agreed to lease to his brother, the defendant's testator, the residence
for a period of six months, the testator agreeing to pay as rent therefor the
amount which it would cost the plaintiff to repair the cottage, so that he might
occupy it while the testator occupied the family residence. Subsequently the
plaintiff informed the testator that it would cost $500 to repair the cottage, and
the testator promised to pay such sum, saying that if the repairs cost more he
would pay the excess.

Before the term began the testator died and his family declined to occupy the
residence, and the plaintiff and his family occupied it during the period for
which it had been rented.

*Held,* that the plain and reasonable interpretation of the agreement was that the
defendant's testator was to pay as rent for the residence the expense of making
the repairs to the cottage, whether more or less than $500, and that a judgment
permitting the plaintiff to recover $500, where it appeared that he had actually
expended for the repairs but $460, should be reduced to the amount actually
expended.

APPEAL by the defendant, Nellie A. Aitken, as administratrix,
etc., of J. Scott Aitken, deceased, from a judgment of the Supreme
Court in favor of the plaintiff, entered in the office of the clerk of
the county of Columbia on the 11th day of November, 1895, upon
the report of a referee.

*Bernard J. Tinney* and *I. H. Maynard,* for the appellant.

*A. V. S. Cochrane,* for the respondent.

HERRICK, J.:

The plaintiff seeks to recover from the defendant the rent
of a certain dwelling house alleged to have been leased by him
to defendant's testator in his lifetime, and alleges in his complaint
that by said lease and agreement it was understood and agreed
that the plaintiff was to " place in suitable repair a certain other
house of the plaintiff, so as to make the same habitable and suitable
for dwelling purposes, in order that the plaintiff with his family

might reside therein during the time that the residence of the plaintiff * * * was to be occupied" by defendant's testator, and that defendant's testator "would pay to the plaintiff the amount of such repairs as aforesaid, and in return for which payment he should have the dwelling house first above mentioned and for the time aforesaid."

He further alleges that he subsequently ascertained that the cost of such repairs would be the sum of $500, and informed defendant's testator thereof, which sum said testator thereupon promised to pay to the plaintiff; that thereafter he caused such repairs to be made and paid the sum of $500, and that neither the testator nor the defendant has paid any part thereof. The case was referred to a referee, and he found in favor of the plaintiff in the sum of $500, for which amount, with costs, judgment was entered against the defendant, and she thereupon appeals to this court.

The referee, in his report, finds that the plaintiff was the owner of a residence in Greenport, Columbia county, and also of a cottage or small house situated near the first-mentioned residence; that the plaintiff and defendant's testator entered into an agreement by which the plaintiff leased the residence from the 15th day of May, 1893, or thereabouts, until the 1st day of October, 1893, or thereabouts, to said testator, and he agreed to take the same; that the plaintiff agreed to place in repair the small house or cottage, so that he and his family might occupy the same and enable the testator to occupy the residence; and that testator, "on his part, promised and agreed that for such repairs and for the use of said first-mentioned house for himself and his family for the period aforesaid, he would pay to the plaintiff the sum of $500, and, if such repairs exceed the sum of $500, that he would, in addition thereto, pay such excess."

It appears that before the time of the occupancy of the residence arrived, and on the 10th day of May, 1893, defendant's testator died, and that his family declined to occupy the residence in question, which, as a matter of fact, was occupied by the plaintiff and his family during the period for which it had been rented.

The plaintiff and defendant's testator were brothers. The residence in question was the family residence; and it appeared pretty conclusively upon the trial, as indicated by the complaint, that the arrangement was that the testator should occupy the family resi-

dence during the summer season of 1893, and that the plaintiff and his family should place in a habitable condition the cottage belonging to the plaintiff, and that the testator, as rent for the family residence, should pay the expenses that the plaintiff should be put to in repairing said cottage. That after this agreement the plaintiff made inquiries as to the probable expense of repairing the cottage, and informed the testator that it would be about the sum of $500, which the testator agreed to pay, saying, also, that if it cost more than $500, he would pay the excess; in other words, the amount of rent to be paid by the testator for the occupation of plaintiff's dwelling house was to be measured by the cost of the repairs to the cottage. The promise to pay $500 was made after the agreement to rent the residence, and to pay for repairing the cottage as the rent thereof, had been made, and upon the plaintiff's informing the testator that such repairs would cost $500, and this promise to pay $500 was coupled with the further assurance that if such repairs cost more than $500, that he would pay the excess. The plain, reasonable interpretation of the agreement was, that defendant's testator was to pay the expense of repairing the cottage; if that was $500, that was what he was to pay; if it was in excess of $500, he was to pay such excess, and if the repairs were less than $500, such lesser amount would be the rent.

The referee has found that the plaintiff paid for repairing the cottage " about the sum of $500," for which amount he renders judgment. As a matter of fact the plaintiff did not pay to exceed $460. The only testimony in the case upon that subject shows that the contract was for $395, and that there was some extra work done which brought the total amount up to between $450 and $460.

The contractor who did the work, in response to the question, " How much was paid?" said, "As near as I can remember, $450 or $460."

His written proposal to do the work specified two methods, for one of which he would charge $365, and for the other $395. In response to the question as to which method the work was done under, he answered: " My recollection is $395. Mr. Aitken paid between $450 and $460; the difference between the $395 was for extra work, such as gutters, that we had not figured on; I can't tell exactly how much until I see the books and bills."

This witness was the only one sworn as to the amount paid by the plaintiff for the repairs in question.

The judgment should, therefore, be reduced to $460, as of October 1, 1893, and as so reduced, affirmed, without costs to either party of this appeal.

All concurred.

Judgment reduced to $460 as of the 1st of October, 1893, and as so reduced affirmed, without costs of this appeal to either party.